IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RIDGELAND EAST END LLC, *et al.*, <br><br> Plaintiffs-Appellants, <br> v. <br><br> GREGORY PERKINS, *et al.*, <br><br> Defendants – Appellees. | Case No. 09 C 2125 <br> Honorable Virginia M. Kendall <br><br> Appeal from Order entered by <br> Honorable Bruce Black, Adversary <br> No. 09-00054 |

## WESTERN CAPITAL PARTNERS LLC'S MOTION AND MEMORANDUM OF LAW TO DISQUALIFY RUFUS COOK, BRUCE COOK, AND BARBARA REVAK AS ATTORNEYS

Western Capital Partners LLC ("Western Capital") respectfully requests that this Court enter an order disqualifying Rufus Cook, Esq., Barbara Revak, Esq., Cook, Revak & Associates (collectively, "Counsel") from representing Ridgeland East End LLC ("REE"), United Legal Foundation ("United"), Ridgeland Corporation ("Ridgeland") and Jackson Park Pinnacle Partners ("JPPP"; all such entities are collectively, the "Appellants") in this action because their representation violates Local Rules of Professional Conduct 83.51.7 and 83.53.7. In addition, Bruce L. Cook, Esq., and the Law Offices of Bruce L. Cook (collectively "Bruce Cook") should be disqualified because their representation of the Appellants violates Local Rules of Professional Conduct 83.51.10.

## MOTION TO DISQUALIFY

Counsel is now trying, in front of this Court, to represent the very same Appellants in which they have been disqualified from representing when the removed action was pending in the Circuit Court of Cook County ("State Court")[1]. After a full and fair opportunity to litigate the disqualification issue the State Court entered its October 23, 2008 order disqualifying counsel ("Disqualification Order" along with the

---

[1] The state court action ("State Court Action") was removed to Bankruptcy Court and then remanded back to State Court. The remand order is being appealed to this Court. If this Court were to reverse the Bankruptcy Court's remand order, the exact same state court action would proceed in Federal Bankruptcy Court.

disqualification hearing transcript, attached hereto as Exhibit 1). Counsel's inextricable involvement in the transaction led the State Court to disqualify Counsel from representing Appellants. *Id.* The Illinois Appellate Court denied Counsel's petition for interlocutory appeal of this order. (Appellate Court Order, attached hereto as Exhibit 2). For the reasons stated below, this Court must disqualify Counsel and, by imputation, Bruce Cook.

## STATEMENT OF FACTS

While Counsel only has appealed the Bankruptcy Court's order remanding the State Court Action, whether Counsel and Bruce Cook should be disqualified bears on their federal representation in the entire matter before the federal courts. For that reason, the State Court record is central to the inquiry.

*The State Court Action and the Parties*

Western Capital is foreclosing its senior mortgage (the "Senior Mortgage") on property (the "Property") now owned by JPPP, a special purpose entity that was formed for the purpose of acquiring the Property from United, Stony Island Properties of Chicago, Inc ("Stony Island"), and a dissolved corporation named East End Development Corporation ("EED," all such entities are collectively, "Sellers"). The Senior Mortgage secured Western Capital's loan (the "Loan") to JPPP to finance the purchase of the Property. Counsel represented themselves, Stony Island, United and EED in selling the Property to JPPP.

All of the Appellants claim to have, or have had, some interest in the Property. All of these interests seem to relate either to Counsel's activities as principals in the Appellants or in the transaction for the acquisition of the Property by JPPP and the financing of that acquisition by Western Capital. Counsel represented the Appellants in opposing Western Capital's foreclose action and filed in State Court a separate Amended Complaint in Chancery against Western Capital on behalf of the Appellants on April 16, 2008 (the "Complaint," the allegations of which and cited exhibits are attached hereto as Exhibit 3).

*ALTA Statements for Sellers.*

In connection with the Loan closing Mr. Rufus Cook personally signed ALTA Statements (the "ALTA Statements") that he knew or should have known were material to JPPP, Chicago Title Insurance Company and Western Capital. (ALTA Statements, attached hereto as Exhibit 4). Without these ALTA Statements, Western Capital would not have received title insurance and funded its Loan. Each ALTA Statements indicated "[t]here are no unrecorded contracts or options to purchase" the Property and "no unrecorded leases...to which the [Property] or building, or portions thereof are subject...." These ALTA Statements were also signed by Greg Perkins as "manager" of JPPP. Mr. Rufus Cook signed the statements on behalf of Stony Island, United, Ms. Revak and himself, personally (as the sole shareholders of a dissolved corporation, EED).

*Carryback Note, Junior Mortgage and Secret Loan Assignment.*

As sellers of the Property, Counsel personally received from JPPP a portion of the purchase price in a carryback note in the amount of $1,636,918.66 (the "Carryback Note"). The Carryback Note was secured by a second mortgage on the Property (the "Junior Mortgage"). (Complaint, Exh. E-5 and E-6) Greg Perkins signed the Carryback Note and Junior Mortgage as "manager" of JPPP.

Shortly after the closing on the Loan, however, Counsel assigned the Carryback Note and the Junior Mortgage, to REE. (Complaint, Exh. E-8) This assignment (the "Secret Loan Assignment") and REE's involvement was not recorded, disclosed to, or consented to by Western Capital.

*Closing Statements and Payments.*

The escrow disbursements from Chicago Title and Trust Company, indicate that, in addition to the Junior Mortgage and Carryback Note, Counsel received the "net proceeds to seller" of $6,291.34 on July 11, 2006, and by signing the disbursement statement on behalf of the Sellers, Mr. Rufus Cook acknowledged receipt of the purchaser's earnest money of $700,000. (Complaint, Exh. G) As Sellers, Counsel also received the benefit of hundreds of thousands of dollars of Loan proceeds used to pay

delinquent real estate taxes and title-insurance-related charges that Sellers owed and were obligated to pay at or before closing, so that they could deliver good title to JPPP. (Complaint, ¶ 15, Exh. A) These included approximately $250,000 in Loan proceeds from the first closing on July 11, 2006 (Complaint, ¶ 32, Exh. G) and over $1,300,000 of Loan proceeds from the second closing on September 15, 2006 (Exhibit 5). At the second closing, Counsel also received $219,637.14 in disbursements to their firm's trust account. (*Id*.) Mr. Rufus Cook signed or authorized the closing statements (the "Closing Statements") detailing these transactions for "Seller." (*Id.;* Complaint, ¶¶ 39, 40, Exhs. G, H-7)

Mr. Rufus Cook provided a memorandum to the title company explaining why he and Ms. Revak (rather than some selling entities) should get the closing proceeds. (See Exhibit 6) In essence, Mr. Rufus Cook told Chicago Title that his law firm or its designees invested $1 million in the Property and paid off a mortgage during the time the Property was owned by United. (*Id.)*

*Subordination Agreement.*

To ensure the priority of Western Capital's Senior Mortgage and Loan over the Seller's Carryback Note and Junior Mortgage, Counsel personally entered into an Inter-Creditor and Subordination Agreement (the "Subordination Agreement") with Western Capital. (Complaint, Exh. E-7) Counsel agreed to the validity and senior priority of Western Capital's Loan and Senior Mortgage on the Property. They also agreed (a) not to collect their Carryback Note from JPPP until Western Capital's Loan was fully paid; (b) to turnover any collections they received to Western Capital as payment on the Loan); and (c) that they would not "assert any claim, right, remedy in respect of the Junior [Mortgage] except as permitted by the [Subordination Agreement]." (Subordination Agreement, ¶ B, §§ 1-3(a) Most importantly, Counsel personally agreed "not to contest or challenge any action made by [Western Capital] in any judicial proceeding [including] motions to foreclose on the security instruments and mortgages and checks of trust that secure [the Loan], or to have a receiver appointed or maintained to protect the Property." (*Id.*) Counsel also agreed "not to contest, or bring (or join) any action or proceeding for the purpose of

contesting the validity, perfection or priority of, or seeking to avoid, the Senior Mortgage." (*Id.* at ¶ B, § 3(c))  Western Capital never released Counsel from their obligations under the Subordination Agreement.

*Counsel's Personal Involvement in the Underlying Transactions.*

Beyond serving as lawyers, Counsel are or were principals of one or more of the Sellers of the Property.  For example, Counsel executed and delivered at closing the deed for a portion of the property as the shareholders of EED.  (See Exhibit 7).

Counsel also are or were principals in other parties involved in the transactions at issue here.  Mr. Rufus Cook amended the articles of JPPP on October 5, 2007, to name himself as the new manager of JPPP.  (See Complaint, Exh. D-4)  He simultaneously named himself and REE as the members of JPPP.  (*Id.*)  According to the 2006 and 2007 Annual Reports filed with the Illinois Secretary of State by Mr. Rufus Cook on behalf of Ridgeland, the purported lessee of a portion of the Property under a Lease that was not disclosed to Western Capital or in the ALTA Statements, ("Secret Lease") Mr. Rufus Cook is Ridgeland's president and registered agent, and Ms. Revak is Ridgeland's secretary.  (Group Exhibit 8.)  According to the Annual Reports filed with the Illinois Secretary of State by REE on May 31, 2006 and May 15, 2007, REE is a member-managed LLC.  (Group Exhibit 9).  Mr. Rufus Cook was one of the organizers of REE, its registered agent, and its sole member as of the dates of those annual reports.  (*Id.*)  REE claims to be the assignee of the Carryback Note and Junior Mortgage on the Property.  (Complaint, Exh. E-8).

*The Litigation Against Western Capital.*

In contravention of the Subordination Agreement, Mr. Rufus Cook filed an action against Western Capital in the Circuit Court for Cook County that challenges the validity of Western Capital's Senior Mortgage and Loan.  Counsel filed suit on behalf of JPPP as well as REE (which has an adverse interest as a creditor of JPPP).

Mr. Rufus Cook personally certified the accuracy of allegations in the Complaint even though they contradict the ALTA Statements and the Closing Statements he signed at the loan closing.  For instance,

the Complaint alleges that the Property is subject to an unrecorded Development Agreement dated September 8, 2005, that Mr. Rufus Cook executed on behalf of United and Mr. Perkins executed on behalf of RPC Realty, LLC (the "Secret Development Agreement"). (Complaint, ¶ 12 and Exh. A) The Complaint also alleges that on June 26, 2006, and prior to the closing of Western Capital's Loan, Mr. Perkins made an absolute assignment to Mr. Rufus Cook of his interests as sole member and manager of JPPP and Mr. Perkins resigned as the manager of JPPP (the "Secret Membership Assignment"). (Complaint, ¶¶ 25, 26 and Exh. C) Furthermore, the Complaint alleges that United's rights under the Secret Development Agreement and Mr. Rufus Cook's rights under the Secret Membership Assignment were further assigned to REE on July 8, 2006 – again, shortly before the initial disbursement of the Western Capital Loan on July 11, 2006. (Complaint, ¶ 29) The Secret Membership Assignment conflicts with, and was prohibited by JPPP's May 24, 2006 Operating Agreement, which prohibits any such assignment without unanimous approval of the members, including Messrs. Louis Jones and Shilu Agrawal, who were members of JPPP at the time. (Complaint, Exh. D at pp. 19, 34) Finally, the Complaint conflicts with Mr. Rufus Cook's sworn ALTA Statements by alleging that a portion of the Property is subject to the Secret Lease. (Complaint, ¶ 110.7; Exh. A-2)

The Complaint also alleges that Sellers did not receive the $700,000 earnest money payment that is shown on the closing statement that Mr. Rufus Cook signed for Sellers acknowledging the payment had been made. (Complaint, ¶ 31) Furthermore, the Complaint alleges that the payment into the Cook, Revak & Associates account was used to pay project expenses of JPPP that were to be funded by Mr. Perkins. (Complaint, ¶¶ 38, 40, Exh. M. at ¶ 2)

## ARGUMENT

Counsel's personal entanglements with the underlying transaction prevents them from continuing to represent Appellants in this action. Counsel are not only indispensable witnesses, they are also defendants with personal liability for breach of the Subordination Agreement. Under these circumstances,

Counsel have irreconcilable conflicts of interest with the Appellants, which, under Local Rules of Professional Conduct 83.53.7 and 83.51.7, prohibit Counsel from continuing to represent the Appellants in this action. In addition, Bruce Cook must be disqualified because their representation of the Appellants violates Local Rules of Professional Conduct 83.51.10

I. **AS MATERIAL WITNESSES TO THIS ACTION COUNSEL ARE BARRED FROM CONTINUED REPRESENTATION OF THE APPELLANTS.**

Local Rule 83.53.7 of the Rules of Professional Conduct prohibits an attorney from accepting or continuing to represent a client in any case where he may be called as a material witness other than on behalf of his client. Specifically, Rule 83.53.7 provides that:

> (b) If a lawyer knows or reasonably should know that the lawyer may be called as a witness other than on behalf of the client, the lawyer may act as an advocate in a trial or evidentiary proceeding unless the lawyer knows or reasonably should know that the lawyer's testimony *is or may be* prejudicial to the client.

Local Rule 83.53.7(b) (emphasis added). Where an attorney was personally involved in the transactions underlying litigation in which the attorney now serves as an advocate, and the attorney's testimony is material to the litigation, the attorney must be disqualified as an advocate in the case. *National Wrecking Co. v. Midwest Term Corp.*, 234 Ill. App. 3d 750, 761, 601 N.E.2d 999, 1005 (1st Dist. 1992).[2]

*National Wrecking* leaves no question as to whether Counsel must be disqualified from representing the Appellants in this action. Plaintiff, National Wrecking Company, performed demolition work for Midwest Terminal Corporation. After the work was completed, however, Midwest failed to pay

---

[2] *National Wrecking* was decided under DR 5-101(b) of the Illinois Code of Professional Responsibility (repealed in 1990 and replaced by the Illinois Rules of Professional Conduct). Under the Code of Professional Responsibility, DR 5-101(b) dealt with a lawyer's duty to refrain from engaging in litigation "if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness." DR 5-101(b). DR 102, on the other hand, dealt with situations under which a lawyer would have to withdraw, when it became apparent that he would be a necessary witness in the matter. Those rules were considered redundant and, when the Illinois Rules of Professional Conduct were adopted in 1990, the distinction was dropped, the rules were combined and the prohibition contained in DR 5-101(b), along with portions of DR 5-102, was split into Rule 3.7(a) and 3.7(b). Consequently, *National Wrecking* continues to serve as precedent for the disqualification of Counsel under IRCP 3.7(b). Local Rule 83.53.7(b) only has minor idiosyncratic differences from IRCP 3.7(b).

National Wrecking for its services. In order to recoup the value of its services, National Wrecking filed an action against Midwest for foreclosure of its mechanics lien on the property and for breach of contract. *National Wrecking Co.*, 234 Ill App. 3d at 754-758, 601 N.E.2d at 1001-1002.

At the outset of the case, Midwest was represented by attorney Raymond Harkrider. Harkrider not only represented Midwest in the litigation with National Wrecking, he also served as Midwest's corporate secretary. And it was Harkrider who, in his role as Midwest's corporate secretary, had represented Midwest in its negotiations with National Wrecking. *Id.*

National Wrecking moved to disqualify Harkrider as attorney for Midwest because his entanglement in the transactions at issue made him a material witness to the action. The circuit court agreed, and disqualified Harkrider from representing Midwest in that case. *Id.* Midwest appealed the order disqualifying Harkrider, and the Appellate Court affirmed the order because the trial court correctly found that Harkrider ought to be called as a witness in the trial. *Id.* at 760-761, 601 N.E.2d at 1005.

Like Harkrider in *National Wrecking*, Counsel were principals in the transactions that underlie this litigation. As such, they have intimate, personal knowledge of the facts on which this action turns. At a minimum, they must testify regarding:

- the bona fides, consideration, terms and circumstances surrounding the Secret Lease signed by Counsel (on behalf of Ridgeland, of which Mr. Rufus Cook is President and Ms. Revak is Secretary), which appears to have been made to interfere with Western Capital's foreclosure in violation of the Subordination Agreement, and pre-closing possession of the Property;

- the inconsistency of the allegations of the Complaint and the Secret Lease with ALTA Statements signed by Mr. Rufus Cook to induce the issuance of title insurance and the Loan;

- the nature of the ownership interest of Mr. Rufus Cook, Ms. Revak and their law firm in the Property, directly and indirectly through nominees, such as Ridgeland, REE and United;

- the bona fides, consideration, terms and circumstances surrounding the Secret Development Agreement and the status of performance thereunder by Sellers;

- the bona fides, consideration, terms and circumstances surrounding the Secret Membership Assignment to Mr. Rufus Cook;

- the exercise by Mr. Rufus Cook of alleged rights under the Secret Membership Assignment to replace Mr. Perkins with himself as sole manager and sole member of JPPP and the alleged pre-closing withdrawal of Mr. Perkins and the other members of JPPP in favor of Mr. Rufus Cook;

- the inconsistency of the allegations of the Complaint, the Secret Development Agreement and the Secret Membership Assignment with ALTA Statements signed by Mr. Rufus Cook at closing;

- the participation and receipt by Counsel of funds in connection with the transaction before, at and after closing of the Loan and the inconsistency of the allegations of the Complaint with payments made to Sellers and the law firm of Counsel as set forth in the Escrow Statements;

- Counsel's connections with JPPP, REE, Ridgeland and United, in which they appear to have officer and/or ownership positions as well as serving as the representatives or agents of Sellers who executed key documents affecting the Property and the Loan;

- the relationship and adversity among JPPP, REE, Ridgeland and United and with the Property;

- the knowledge of Counsel regarding alleged inequitable conduct by Western Capital;

- why Counsel did not record or disclose to Western Capital the existence of the Secret Lease, Secret Membership Assignment, Secret Development Agreement and Secret Loan Assignment;

- the compliance or noncompliance by Counsel under the Subordination Agreement, including the filing of the Complaint and motions opposing Western Capital's foreclosure on the Property; and

- the circumstances surrounding the Secret Loan Assignment and Secret Membership Assignment to wholly-owned nominees of Mr. Rufus Cook in the apparent attempt to evade his obligations under the Subordination Agreement.

These subjects go to the heart of the allegations of the Complaint and to the validity of the Loan transaction. Counsel are the only witnesses who can provide much of this testimony and the Appellants will suffer prejudice by Counsel's testimony on the following matters:

- JPPP wants its counsel to press a claim under its Owner's Title Policy with Chicago Title and Trust Company, but that will expose Mr. Rufus Cook to personal liability under his ALTA Statements;

- As owner of the Property, JPPP would not want leases or other encumbrances on their Property, yet Counsel has advanced Ridgeland's claim under the so-called "lease" and "conditional development agreement" and REE's Junior Mortgage and Carryback Note;

- REE wants its counsel to assert the Junior Mortgage and Carryback Note (as successor to Cook and Revak), but Mr. Rufus Cook signed the Subordination Agreement in which he personally pledged not to challenge Western Capital's Mortgage;

- JPPP wants its counsel to dispute that the Loan and Mortgage documents are signed only by Greg Perkins as manager of JPPP, but, as counsel for REE he is advancing the Junior Mortgage and Carryback Note signed by Perkins in the same capacity;

- JPPP wants its counsel to dispute that the Loan and Mortgage documents are signed only by Greg Perkins as manager of JPPP, but Rufus Cook claims he was personally aware that Perkins lacked authority as manager prior to the closing but nevertheless let Western Capital receive Loan Documents signed by Perkins in that capacity;

- Rufus Cook must testify why he unilaterally filed documents changing the members and manager of JPPP to himself, although the other members of JPPP, Louis Jones and Shilu Agrawal never consented to this change and may sue him for violating JPPP's Operating Agreement; and

- JPPP would like credit for the $700,000 of earnest money shown on the closing statement that Mr. Rufus Cook signed for Sellers, but Counsel as sellers now dispute that payment.

Consequently, Counsel should be disqualified from representing the Appellants in this action.

*National Wrecking Co.*, 234 Ill. App.3d at 761, 601 N.E.2d at 1005.

**II.   LOCAL RULE 83.51.7 DISQUALIFIES COUNSEL BECAUSE THEIR PERSONAL INTERESTS LIMIT THEIR ABILITY TO REPRESENT APPELLANTS.**

Counsel's representation of the Appellants is barred by Local Rule 83.51.7(b), which provides:

> (b) A lawyer shall not represent a client if the representation of that client will be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
>
> (1) **the lawyer reasonably believes the representation will not be adversely affected**; and
>
> (2) the client consents after disclosure.

Local Rule 83.51.7(b) (emphasis added).

Counsel's personal entanglements in the underlying transactions clearly violate this rule. Western Capital's foreclosure and Appellant's Complaint both deal with whether Western Capital should be allowed to foreclose its Senior Mortgage on the Property. In the Subordination Agreement, Counsel expressly agreed "not to contest or challenge any action made by [Western Capital] in any judicial proceeding [including] motions to foreclose on the security instruments and mortgages and checks of trust that secure [the Loan], or to have a receiver appointed or maintained to protect the Property." (Subordination Agreement, ¶ B, § 3(a))  They also agreed "not to contest, or bring (or join) any action or proceeding for the purpose of contesting the validity, perfection or priority of, or seeking to avoid, the Senior Mortgage." (Subordination Agreement, ¶ B, § 3(c))

Counsel's challenge to Western Capital's rights to foreclose on the Property place them in material breach of the Subordination Agreement. Counsel's continued representation of the Appellants in opposition to the foreclosure exposes them to personal liability to Western Capital for accrued interest, attorneys' fees and costs, and diminution of value of the Property.

Counsel to even greater personal liability under both the Subordination Agreement and common law for failing to disclose, as principal actors in the underlying transactions, the existence or terms of the Secret Lease, Secret Membership Assignment, Secret Development Agreement and Secret Loan Assignment to Western Capital. The misrepresentations in the ALTA Statements and Closing Escrow Statements signed by Mr. Rufus Cook were material to the underlying transactions. Western Capital would not have made the Loan if it had been aware of secret agreements that allegedly impacted on the governance of JPPP as a special purpose entity formed to own the Property, of JPPP's lack of equity in the Property due to the fact that JPPP never paid the $700,000 earnest money shown on the Escrow Disbursement Statements signed by Mr. Rufus Cook, and of Mr. Rufus Cook's secret ownership in JPPP under the Secret Development Agreement. If Appellants prevail, Counsel would subject themselves to personal liability.

Under these circumstances, Counsel cannot reasonably argue that their ability to advocate zealously for the Appellants will not be affected adversely by their exposure to personal liability. Consistent with the general purposes of the Rules of Professional Conduct, Subsection 1.7(b)[3] "seeks to ensure that a lawyer's range of options on behalf of A are not limited by responsibilities that the lawyer also owes to B, whether B is another client, a third party, or the lawyer himself." Geoffrey C. Hazard & W. William Hodes, THE LAW OF LAWYERING: A HANDBOOK ON THE MODEL RULES OF PROFESSIONAL CONDUCT (2d Ed.), 249.

---

[3] Illinois Rule of Professional Responsibility 1.7(b) mirrors the language of Local Rule of Professional Responsibility 83.51.7(b).

When objectively viewed, Counsel's ability to provide unbiased advice to the Appellants is clouded by Counsel's personal interest in justifying their conduct during and after the sale of the Property, their interest in avoiding personal liability under the Subordination Agreement, and their personal, financial interest in protecting the Junior Mortgage. Counsel must choose between implicating one or more of the Appellants as the wrongdoers or attempt to exonerate the Appellants by taking admitting that Counsel themselves engaged in suspect, and potentially illegal, conduct without the Appellants' knowledge or authorization. Counsel's position as both a defendant and counsel to the Appellants is so egregiously untenable that no reasonably competent lawyer providing objectively reasonable advice would recommend the Appellants accept representation from Counsel.

Each of these myriad conflicts of interest is non-consentable. Ill. Ethics Op. 00-01 (2000) (attached as <u>Exhibit 10</u>). This Ethics Opinion finds that, where a lawyer enters into an agreement that materially limits his ability to represent his Appellants, there exists a conflict of interest to which the lawyer's Appellants cannot consent. *See also Jamieson v. Slater*, No. CV 06-1524-PHX-SMM, 2006 WL 3421788, *8 (D. Ariz. Nov. 27, 2006). *Jamieson* finds that, where attorney's conduct in underlying real estate transaction exposed him to personal liability and allegations of malpractice, client cannot consent to continued representation and attorney must be disqualified); Local Rules of Professional Conduct, Rule 83.51.7, Cmt. *Lawyer's Interests* ("[I]f the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice.") There are actual conflicts in this matter, as addressed above. In addition, the following are actual conflicts:

- Counsel represents <u>both</u> JPPP as buyer and personally were Sellers of the Property and counsel for other Sellers;

- Counsel personally signed a document agreeing not to challenge Western Capital's efforts to foreclose, yet now they are doing just that on behalf of their Clients; and

- Counsel are representing JPPP as owner, but also Ridgeland as the Junior Mortgagee and lessee under the so-called "lease" that diminishes the value of the Property.

For all the reasons outlined above, Western Capital has standing to assert disqualification of Counsel under Local Rule 83.51.7(b). Generally speaking, only a client may seek disqualification of an attorney or former attorney under Local Rule 83.51.7(b). However, when the unethical conduct of an attorney is glaring and manifest, as in this matter, an opposing party may bring the ethical violation to the attention of the court. *See* Local Rule 83.51.7 cmt. *Conflict Charged by an Opposing Party*. ("Where the conflict is such as clearly to call in question the fair or efficient administration of justice, opposing counsel may properly raise the question.").[4];

Counsel's representation of the Appellants calls into question the fair and efficient administration of justice. As Western Capital has shown in its motion, Counsel have a deep personal stake in the outcome of this litigation as principals of the transaction in question and by their many roles with the Plaintiffs. As alleged in Western Capital's complaint against them, Counsel were personally involved in a scheme to defraud Western Capital by misrepresentations in the closing documents that they signed or did not disclose. The scheme is laid bare not only by documents signed by Counsel, but by the admissions they make in the pleadings they have filed on behalf of the Clients in this litigation. Indeed, this very litigation appears to be the mechanism through which the scheme to defraud Western Capital was meant to come to fruition. Under these circumstances, there can be no question that the Court must take action and disqualify Counsel to protect the integrity of the proceedings. Thus, the Court must disqualify Counsel as attorneys for the Appellants in this action.

---

[4] Two cases in this district have found that a non-client defendant did not have standing to bring a disqualification motion. *See In re Sandahl*, 980 F.2d 1118 (7th Cir. 1992); *Thomas & Betts Corp. v. Panduit Corp.*, 93 C 4017, 1995 WL 319635 (N.D. Ill. May 25, 1995). Both cases are distinguishable to the situation in this matter, however. *Sandahl* did not rule on the subject of whether the fair and efficient administration of justice was at issue such that opposing counsel had standing to bring the disqualification motion. In *Thomas & Betts* the Court was "unpersuaded that…public confidence in the administration or justice would be eroded." *Thomas & Betts*, 1995 WL 319635, at *2, n.3.

## III. LOCAL RULE 83.51.10 DISQUALIFIES BRUCE COOK AS COUNSEL'S ASSOCIATE.

Client confidentiality is an essential element of the attorney's duty of loyalty to his client. There is a presumption in the law that client confidences are disclosed to members of the same law firm. As a result, Local Rule 83.51.10 entitled "Inputed Disqualification: General Rule" states:

> No lawyer associated with a firm shall represent a client when the lawyers knows or reasonably should know that another lawyer associated with that firm would be prohibited from doing so ....

LR 83.51.10(a). Accordingly, if the association between Counsel and Bruce Cook is the equivalent of a "lawyer associated with a firm" within the meaning of LR 83.51.10, Bruce Cook must be disqualified. The comment to LR 83.51.10 elaborates on the definition of "firm":

> Whether two or more lawyers constitute a firm within this definition can depend on the specific facts. For example, two practitioners who share office space and occasionally consult or assist each other ordinarily would not be regarded as constituting a firm. However, if they present themselves to the public in a way suggesting that they are a firm or conduct themselves as a firm, they should be regarded as a firm for the purposes of the rules. The terms of any formal agreement between associated lawyers are relevant in determining whether they are a firm, as is the fact that they have mutual access to information concerning the Appellants they serve. Furthermore, it is relevant in doubtful cases to consider the underlying purpose of the rule that is involved. A group of lawyers could be regarded as a firm for purposes of the rule that the same lawyer should not represent opposing parties in litigation, while it might not be so regarded for purposes of the rule that information acquired by one lawyer is attributed to another.

LR 83.51.10, Cmt., *Definition of "Firm."* While merely sharing office space with Counsel does not require disqualification, the Court can, and should disqualify Bruce Cook because he shares an entrance, receptionist, conference room, copy and fax equipment, phone number and works on matters together with Counsel. *See* American Bar Association Informal Ethics Opinion 1378 (1976) (a shared office in combination with shared access to client information will render two lawyers a law firm).

In *Teleprompter of Erie Inc. v. City of Erie*, 573 F. Supp. 963 (W.D.Pa. 1983), the district court held that two attorneys who shared office space and office services were members of the same "firm" for the purpose of ethical rules. The attorneys shared a law library, copy machines and secretarial personnel. In addition, the attorneys signed pleadings as individuals under a common firm name. The Court held that the

one of the attorneys had to withdraw due to a conflict in a matter because they "functioned as members of the same firm and have acted as *de facto* partners." *Id.* at 965.

Bruce Cook qualifies for imputed disqualification in this matter based on several factors:

- **Shared office** – both Counsel and Bruce Cook have an office at 7411 S. Stony Island, Ave., Chicago, Illinois 60649. *See* Docket Nos. 11, 12, 16, 20, and 21;

- **Shared receptionist** – each time counsel for Western Capital has called Bruce Cook or Counsel the same receptionist answers the phone for both law firms and attorneys;

- **Fax machine** – the pleadings filed by Counsel and Bruce Cook demonstrate they share a fax machine with the same number: 773.752.5151. *See* Docket Nos. 11, 12, 16,and 20;

- **Telephone number** – the pleadings filed by Counsel and Bruce Cook demonstrate they share a telephone number: 773.752.2000. *See* Docket Nos. 1, 10, 11, 12, 13, 16, 20, and 21;

- **Work together on matters** – Counsel and Bruce Cook have filed joint motions, signing both of their names. In addition, in their motion for extension of time, the pleading made it clear they work on the same matters. [Docket No. 20, Exh. B, ¶ 2]. More importantly, at various times both lawyers have held themselves out to the public *as both representing the Appellants* [*See* Docket Nos. 1, 11, 12, 16, 20, and appearances of Counsel and Bruce Cook]. Additionally, each has shown up, individually, before this Court, speaking on behalf of all Appellants.

Because Bruce Cook and Counsel unquestionably share office space, a receptionist, fax machine, phone number and work together on the same matters, Bruce Cook also must be disqualified.

## CONCLUSION

**WHEREFORE**, Western Capital Partners LLC respectfully requests that this Court enter an order disqualifying Rufus Cook, Esq., Barbara Revak, Esq., the firm of Cook, Revak & Associates, Bruce L. Cook, Esq., and the Law Offices of Bruce L. Cook from representing Appellants in this action. Western Capital further requests any additional relief that this Court deems just and proper.

Dated: June 12, 2009

Respectfully Submitted,

WESTERN CAPITAL PARTNERS, LLC

By: /s/ Patricia J. Fokuo
J. Mark Fisher (ARDC 3121711)
Patricia J. Fokuo (ARDC 6277431)
Schiff Hardin LLP
6600 Sears Tower
Chicago, Illinois 60606

Phone: (312) 258-5500
Fax: (312) 258-5600

CH2\7350980.4